IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | | |
|---|---|---|
| JAMES B. LLOYD, JR. and KIMBERLY LLOYD, | ) ) ) | C/A No. 0:05-1495-CMC |
| Plaintiffs, | ) ) | **ORDER and OPINION DENYING MOTION TO EXTEND AND GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| GENERAL MOTORS CORPORATION, | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on two related motions. The first motion was filed by Defendant General Motors Corporation ("GM") on November 23, 2005, and seeks summary judgment based largely on the absence of expert testimony to support Plaintiffs' claims. Dkt No. 24. The second motion was filed by Plaintiffs James and Kimberly Lloyd ("Lloyds") on December 13, 2005, and seeks an extension of time to supplement their expert witness disclosures. Dkt No. 26. For the reasons set forth below, the court denies the Lloyds' motion to supplement and grants GM's motion for summary judgment.

**BACKGROUND**

**Allegations.** The present action arises out of a motor vehicle accident which occurred on May 24, 2002, when James Lloyd's 2000 Chevrolet Silverado pick-up truck collided with a dirt embankment. Plaintiffs allege that Mr. Lloyd's injuries from this accident were caused or exacerbated by the non-deployment of his front impact air bag. Plaintiffs allege that the air bag should have deployed because the accident "was frontal or near frontal" and because, at the time of

the accident, Lloyd "was traveling at a speed far exceeding the 9-16 mph 'threshold level' detailed in the vehicle's owner's manual for air bag deployment." Affidavit of James B. Lloyd, Jr. ("Lloyd Affid.") ¶¶5 & 9. Based on these allegations, Plaintiffs assert claims for breach of warranty, strict liability and negligence. Dkt No. 4 (Amended Complaint).

**Evidence of Speed of Vehicle.** As noted above, Mr. Lloyd estimates his speed at the time of impact as exceeding 9-16 miles per hour. This estimate cannot, however, be considered based on first hand knowledge given Mr. Lloyd's concession that the accident occurred because "he fell asleep and missed a stop sign and crashed into a dirt embankment." *See* Lloyd Affid. ¶ 4.

The record also contains a Traffic Collision Report Form prepared by the responding officer which includes an "estimated speed" of 45 miles per hour. Dkt No. 24-4 at 2 (Report attached to GM's memorandum in support of summary judgment); Dkt No. 25-1 at 2 (Plaintiffs' memorandum in opposition to summary judgment citing only accident report for speed). No basis for the officer's estimate is provided. Neither does the report specify whether the speed relates to the speed at which Plaintiff ran the stop sign or the speed at impact or both.

Plaintiff has offered no other evidence of the vehicle's speed or, more critically, of the actual speed at impact. GM's expert has, however, opined that the impact caused "a 26 mph change in longitudinal velocity over 176 milliseconds or more." Dkt No. 23-2 at 8. This opinion is the only admissible evidence of the speed at impact offered to date.

**Plaintiffs' Expert Report.** The currently governing scheduling order was entered on June 27, 2005, and established dates both for Plaintiffs' and Defendant's expert witness disclosures which were set on October 25, 2005 and November 25, 2005 respectively. As to both deadlines, the order required the party to file and serve a document identifying the expert "and certifying that a written

report prepared and signed by the expert pursuant to Fed. R. Civ. P. 26(a)(2)(B) has been disclosed to the other parties." Dkt No. 8 ¶¶ 5 & 6.

On the date set for Plaintiffs' expert witness disclosures, Plaintiffs filed a report which included the statement that "a preliminary written report prepared and signed by the expert has been provided to the Defendant." Dkt No. 16 (incorrectly denominated as Defendant's report on the docket). The filed report states only the categories of opinion to be offered. For example, the report states that "Dr. Zhao will offer expert opinions regarding air bag deployment, as well as manufacturing and material defects, design of the vehicle and airbag, and all applicable areas of expertise identified in his CV." The last of these categories is highly open-ended given that Dr. Zhao lists twelve diverse areas of expertise in his CV.[1]

The content of Plaintiffs' expert report was filed by Defendant in support of its motion for summary judgment. This report consists of less than one page of text followed by seven photographs of the Lloyds' truck. Dkt No. 24-5. The introductory paragraph states that the document is "a brief status report based on initial investigation of the referenced truck" and that "[n]o conclusions have been reached from the initial investigation." *Id.* The only "observations" of any relevance are the identification of the model of the truck and indication that it had dual air bags (matters which are not in dispute). The photographs show damage to the front end of the vehicle. Although the report states that one of its purposes is "to lay out some of the work and investigations to be carried out in order

---

[1] The expert's curriculum vitae is attached to this report. While not relevant to the present motion, it is notable that this CV is inadequate to satisfy the requirements of Rule 26(a)(2)(B). For example, rather than listing his published articles, Dr. Zhao states only that he has published "[o]ver 30 peer-reviewed articles," specifying four journals as a non-exclusive list of the journals in which the articles have appeared. Similarly, while he states that he has "[t]estified as an expert in depositions and at trial" he does not identify the cases.

to reach conclusions," the document filed with the court does not include any such information. Dkt No. 24-5 (report attached to Defendant's motion). Plaintiffs' motion for an extension of time to supplement the expert report (Dkt No. 26) does not challenge the completeness of Defendant's exhibit. Dkt No. 26 at 1. The court, therefore, concludes that not even this promised listing of "work and investigations to be carried out" was provided.

**Defendant's Expert Report.** Defendant filed its expert disclosure on November 23, 2005, attaching the complete report. Dkt No. 23-1 & 23-2.[2] The expert report states that the expert had "been informed that Plaintiffs no longer own the 2000 Chevrolet Silverado at issue in this case." The opinions formed were, therefore, based on "all available photographs of the post-incident, damaged condition of the subject vehicle taken by Marvin Burts on September 25, 2002, and accident scene photographs taken by Marvin Burts on April 4, 2003." Dkt No. 23-2 at 4. The information relied on also included various other sources including the "SDM Data and Translation." Dkt No. 23-2 at 3 (listing SDM as among information considered); Dkt No. 23-2 at 5 (discussing data downloaded from the subject vehicle after the accident).[3]

Based on this available information, defense expert Kathryn F. Anderson observed that "[t]he most significant contact damage to the front of the subject vehicle was primarily concentrated at the

---

[2] The scheduling order requires filing only of a document identifying the expert and indicating that the written report has been disclosed to other parties. This is intended to limit filing of what are often lengthy and sometimes confidential reports. In the present case, the report would, however, have been required to be filed in support of the contemporaneously filed motion for summary judgment.

[3] According to Anderson's report, "[t]he SDM is an onboard electronic module which functions to continuously monitor the air bag system in the car while the ignition is on, to deploy the air bags, and to record certain crash and air bag system data in deployment and non-deployment level crash events." Dkt No. 23-2 at 6 (discussing function in detail).

4

left front corner of the vehicle, involving at least the front bumper, hood, left front headlamp and left front fender." She opines that the upward displacement of these components "indicate[es] the crash induced a vertical input to the front structure" and that these factors, combined with the location of embedded dirt are consistent with "the subject vehicle's impact with the sloping dirt embankment that is depicted in the accident scene photographs." Dkt No. 23-2 at 5. Based on this information she concludes that "the subject vehicle did not experience a frontal or near frontal impact that was sufficient enough to warrant deployment of the air bags" because the "impact . . .with the dirt embankment did not generate a level of longitudinal deceleration significant enough to be detected as the beginning of a deployment level crash event." *Id.*

Similarly, based on her review and analysis of the SDM information, Anderson concludes that the "air bag system was functioning properly" at the time of the accident. She further concludes:

> The information contained in the non-deployment event file is consistent with the circumstances of the subject accident. The SDM had recorded a maximum algorithm change in longitudinal velocity (delta V) of 26.4 mph for the accident event. This maximum delta V was recorded at an EP1 time (event progression time) of 176.25 milliseconds. A deployment was not commanded (Code 51) by the SDM in response to the vehicle decelerations that were sensed during Mr. Lloyd's accident event, and therefore a deployment file was not written. The air bag system in Mr. Lloyd's truck performed properly in this accident and responded appropriately by not deploying during the longer duration frontal crash.

Dkt No. 23-2 at 6. *See also* 23-2 at 8 (concluding that impact caused "a 26 mph change in longitudinal velocity over 176 milliseconds or more [which] is not necessarily an accident event that would warrant deployment of the frontal air bags"). Anderson further explained:

> Air bags are not designed to deploy in some accidents of long duration, where occupants may be at risk of being out-of-position by the time the sensing system detects a crash and deploys the air bags, exposing that occupant to an increased risk of inflation induced injury. The frontal impact threshold for air bag deployment is specifically set at a level where the risk of exposing a potentially out-of-position

5

occupant to an inflation induced injury is balanced against the benefits of providing supplemental protection against significant and life-threatening injuries.

*Id.*

Anderson also discusses a recall of the SDM component of some 2000 model year GM trucks. She states, however, that Lloyd's truck was not among those covered by the recall and that the concern which prompted the recall "did not involve the SDM's ability to detect a deployment level crash and make a decision to deploy the air bags. Dkt No. 23-2 at 8.

## DISCUSSION

**I. PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO SUPPLEMENT RULE 26(a)(2)(B) DISCLOSURES TO PROVIDE EXPERT'S CONCLUSIONS. Dkt No. 26.**

In their motion to extend the time in which they might supplement their expert witness report, Plaintiffs concede that the court established October 25, 2005 as the deadline for Plaintiffs to provide that expert report. They assert that they did provide Defendant with a report on that date "disclosing [their] expert witness, the subject and basis of his opinions, the material on which he will rely in making such opinions, and his CV." Dkt No. 26 at 1. They concede, however, that the report contained only observations and no conclusions.

Plaintiffs argue that the lack of conclusions is excused because "Plaintiffs' attorney was under the mistaken impression that she had fully complied with the Rule 26(a)(2)(B) requirements." Somewhat inconsistently, Plaintiffs state that upon learning of a product recall which they believed was related to this vehicle's air bag system, they had the "expert witness cease work during settlement discussions so as not to add additional expense." *Id.* n.1 (also stating that their "expert is currently preparing such formal report").[4]   Plaintiffs also suggest that the delay in disclosure will cause no

---

[4] Plaintiffs' motion was filed on December 13, 2005. As of the date of this order, nothing has been filed with the court which would suggest that the expert report has, in fact, been provided to Defendant. Discovery expires on January 23, 2006.

6

harm to Defendant because discovery had, at that time, not yet expired and trial remained six months away.

Rule 26(a)(2)(B) requires a party to provide "a written report prepared and signed by the witness" which contains:

> a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a s summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(b). The report which Plaintiffs provided contains no opinions whatsoever. It is, therefore, wholly inadequate to satisfy the initial requirement of Rule 26(a)(2)(b) that the report include "a complete statement of all opinions to be expressed."

Plaintiffs' proffered explanations for their failure to comply with this federal rule are inadequate to excuse the deficiencies. In the first instance, Plaintiffs can hardly claim ignorance of the requirements of the federal rule given both this court's reference to it in the scheduling order and Plaintiffs' express certification of compliance. Dkt No. 16. Moreover, Plaintiffs' particular phrasing of their certification, "that a *preliminary* written report prepared and signed by the expert has been provided to the Defendant," suggests a knowing provision of something less than a full report. Plaintiffs' claim of a decision to curtail expenditures pending settlement negotiations, likewise, is inconsistent with any claim of ignorance of requirements of the rule.

The settlement negotiations themselves provide no excuse for the failure to comply with the scheduling order. Had the parties requested a stay of the deadlines pending negotiations, this court would likely have granted it. No such request was, however, made by either party. Neither is there

any indication that Defendant in any way induced Plaintiffs into delaying compliance with the scheduling order pending settlement negotiations. Plaintiffs have, in any case, provided no specific information regarding the settlement negotiations from which the court might discern the time frame during which they occurred and whether they were ever so intensive as to induce Plaintiffs into believing that the expert witness report would not be needed.

Plaintiffs' argument that the delay causes no prejudice is, likewise, misplaced. This court's scheduling orders are carefully crafted to insure that adequate time is given for each stage of the proceedings. This includes routinely requiring plaintiffs to file their expert reports at least one month before the defendant's reports are due and at least two months before the close of discovery. This staggering of deadlines recognizes the allocation of the burden of proof while providing adequate time for depositions based on the disclosed opinions. More critically, it affords the defending party the opportunity to decide what, if any, expert testimony is required.

This is not to suggest that the schedule for expert disclosures cannot be amended in appropriate circumstances. Absent extraordinary circumstances, however, this court does not grant extensions of deadlines after their passage. Here, Plaintiffs allowed their expert deadline to pass, filing a facially inadequate report on that date, but without requesting an extension. They then waited an additional six weeks before seeking an extension. During this time, Defendant filed its expert report and a corresponding motion for summary judgment based largely on Plaintiffs' failure to proffer expert testimony in support of their claims. Even this belated request for an extension was not filed until the day after Plaintiffs filed their response to Defendants' motion for summary judgment. Moreover, despite Plaintiffs' assertion that a complete expert report is in the works (*supra* at 6 & n.4) and the approach of the discovery deadline (January 23, 2006), no report or even outline of a report has been proffered.

Nothing in these circumstances supports a finding that Plaintiffs' requested extension is supported by good cause  *See* Fed. R. Civ. P. 16 ("a schedule shall not be modified except upon a showing of good cause").  Quite the contrary, granting the requested extension under these circumstances would encourage parties to disregard court ordered deadlines and the orderly progress of discovery.  The motion for extension is, therefore, denied.

## II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.  Dkt No. 24.

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts."  *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence.  The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

9

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995). Further, a party may not create a genuine issue of material fact by presenting two conflicting versions of events. *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). *See also Rohrbough v. Wyeth Laboratories, Inc.,* 916 F.2d 970, 974-77 (4th Cir. 1990) (affirming trial court's rejection of expert's affidavit testimony which contradicted his sworn deposition testimony).

### B.  ABSENCE OF PROOF OF DEFECT

Regardless of Plaintiffs' theory of recovery, they must prove that the air bag in Mr. Lloyd's truck did not deploy *under circumstances in which it should have deployed*. They have, however, proffered no admissible evidence to support such a conclusion. This is first and foremost because of the absence of expert testimony to establish the specific circumstances of the impact and whether the air bag should have deployed under those circumstances. As established by Anderson's uncontradicted expert report, whether the air bags should deploy requires consideration of more than just the speed of the vehicle immediately before impact.

The only prediction of admissible evidence of speed at impact is contained in Ms. Anderson's expert report which opines that the truck experienced "a 26 mph change in longitudinal velocity over 176 milliseconds or more" but that this "is not necessarily an accident event that would warrant deployment of the frontal air bags." Without expert explanation, even this cannot be translated into the raw conclusion that there was a "26 mph impact."

The statement in Mr. Lloyd's affidavit as to his speed at the time of the accident is not a prediction of admissible evidence because he has also averred that he was asleep at the time of the accident. This is inconsistent with any claim of first hand knowledge.

The statement of speed in the accident report, likewise, lacks a foundation. This is both because no source of the information is provided and because the speed is not expressly linked to the speed at impact as opposed to the speed of the vehicle at the time Mr. Lloyd ran the stop sign on the opposite side of the road.

Even if accepted as accurate estimates of the speed just prior to impact, neither Lloyd's statement that the vehicle was traveling in excess of 16 miles per hour at the time of the accident, nor the general statement in the accident report that Lloyd was traveling at the rate of 45 miles per hour at some point before impact establish a breach of warranty. This is because the language Plaintiffs rely on for their warranty claim acknowledges that factors other than speed affect whether an air bag should deploy:

> If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 9 to 16 mph. . . . The threshold level can vary, however, with specific vehicle design so that it can be somewhat above or below this range. If your vehicle strikes something that will move or deform, such as a parked car, the threshold will be higher.
>
> * * *
>
> In any particular crash, no one can say whether an air bag should have inflated simply because of the damage to a vehicle or because of what the repair costs were. Inflation is determined by the angle of the impact and how quickly the vehicle slows down in frontal or near-frontal impacts.

Dkt No. 25 at 1 (excerpt from GM Owner's Manual for 2000 Chevrolet Silverado pick-up truck).

It is undisputed that the object Plaintiffs' truck struck was a dirt embankment. The extent to which the shape or consistency of the embankment modified the rate of impact must, therefore, be

11

considered to determine even the warranty claim. These factors cannot be determined from any evidence presented by Plaintiffs. Moreover, they necessarily require expert interpretation which Plaintiffs have failed to proffer.

By contrast, Defendant has proffered an extensive expert report which explains what factors must be considered and applies those factors to conclude that the air bag should not have deployed. In the absence of any contradictory expert report, Defendant's report compels a decision in Defendant's favor. Even if this report is not considered, the court could not allow Plaintiffs' case to proceed as they have failed to present evidence on which a jury could find in their favor.

### C.     TIMING OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs suggest that Defendant's motion for summary judgment is premature because Defendant "has filed no Discovery in this case and taken no depositions of the Plaintiffs' witnesses" and because discovery has not yet concluded. This argument is not well taken. It ignores the allocation of the burden of proof, which rests on Plaintiffs. In any case, Plaintiffs had the opportunity to direct the court to whatever evidence might support their claim by affidavit or otherwise in responding to the motion for summary judgment. They have offered only minimal evidence and none which is adequate to sustain their burden of proof.[5]

---

[5] The only evidence offered by Plaintiffs is Mr. Lloyd's affidavit as to his limited recollection of the accident, a copy of one page of his owner's manual, and a computer screen printout establishing that some model 2000 Chevrolet Silverado trucks were recalled. Additional evidence submitted by Defendant includes Plaintiffs' preliminary expert report, Defendant's expert report, and the accident report. The court has considered all of these to the extent they might support Plaintiffs' claims.

**CONCLUSION**

For the reasons set forth above, the court DENIES Plaintiffs' motion to extend the time to supplement their Rule 26(a)(2)(B) disclosures (Dkt No. 26) and GRANTS Defendant's motion for summary judgment (Dkt No. 24).

**IT IS SO ORDERED**.

S/ Cameron McGowan Currie  
CAMERON MCGOWAN CURRIE  
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
January 20, 2006

C:\temp\notesB0AA3C\05-1495 vlv lloyd v GM deny extend expert ddl & gr SJ.wpd